## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  26-263 |
| v. | : | |
| JOSE GONZALEZ | : | |
| JAMIE VELEZ | | |
| OSWALDO MERCED-RIVERA | : | |
| ANYELO RONDON-HERRERA | | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Lindsey T. Mills, Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendants, Jose Gonzalez,[1] Jamie Velez, Oswaldo Merced-Rivera, and Anyelo Rondon-Herrera, prior to trial.

Each of the above-named defendants has been charged because of his involvement in large-scale and dangerous fentanyl trafficking, responsible for distributing thousands of bags – each one capable of killing the user – of fentanyl mixed with dangerous adulterants into the streets of Kensington in Philadelphia. All while defendants Gonzalez and Velez were on probation for other criminal convictions at the time, and defendant Rondon-Herrera, a citizen of the Dominican Republic, was illegally present in the United States.[2]

---

[1] At his initial appearance before the Honorable Lynn A. Sitarski on June 11, 2026, defendant Gonzalez stipulated to pre-trial detention without prejudice. He is addressed in this motion for the sake of completeness.

[2] At the time of writing this motion, the government is still in the process of confirming whether an ICE detainer will be lodged as to defendant Rondon-Herrera.

Following a months-long investigation by Drug Enforcement Administration ("DEA"), Chester County Detectives, and the Philadelphia Police Department's Intensive Drug Investigation Squad ("IDIS"), each of the charged defendants was identified as a key participant in the packaging and distribution of enormous quantities of fentanyl. These defendants were responsible for running an entire block, the 2800 block of Kensington Avenue, pushing large volumes of their branded "Hot Sauce" stamped fentanyl into the streets and fueling the opioid epidemic that is ravaging the Kensington neighborhood and the City of Philadelphia.

The defendants are all tied to a significant drug trafficking organization ("DTO"), referred to in the Indictment as the "Hot Sauce DTO," responsible for distributing substantial quantities of dangerous and deadly drugs into this community in the Eastern District of Pennsylvania and beyond. Each defendant also either has a criminal history, many involving drug trafficking, was on court supervision at the time of the charged criminal conduct, or is in this country illegally and subject to deportation, thereby enhancing the risk that each defendant poses as a clear danger to the community or a substantial risk of flight. Accordingly, pretrial detention is necessary in this case.

The defendants are charged by Indictment with several violations of Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). The defendants are therefore facing a maximum penalty under the Controlled Substances Act of life imprisonment and a mandatory minimum of either 10 years' imprisonment, or 15 years' imprisonment for defendant Gonzalez due to the 851 notice of a prior drug conviction, and, thus, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community or the defendants' presence at trial. *See* 18 U.S.C. § 3142(e)(3)(A).

The defendants cannot rebut this presumption and therefore, should be detained. There is no condition or combination of conditions that will reasonably assure the defendants' appearance as required and/or the safety of the community, and the Government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendants.

## I.    BACKGROUND

### A.  Probable Cause and Evidence In This Case

A grand jury indicted the defendants for multiple counts of conspiracy to distribute controlled substances, distribution of fentanyl and possession with the intent to distribute fentanyl, heroin, and methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C). Probable cause thus exists to believe that the defendants violated these statutes. The anticipated trial evidence in this case is strong and clearly demonstrates the defendants' guilt.

The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington

Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,600 individual bags, of the deadly poison on a daily basis. In order to fully identify ***and dismantle*** this drug trafficking organization, the investigation spanned over six months, involved countless hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

Finally, on March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that

fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

### B. Criminal History and Defendant Background

Defendant Gonzalez has at least four prior felony drug trafficking convictions for Possession with Intent to Distribute ("PWID") and was on Philadelphia probation for possession of a firearm as a felon at the time of the conduct charged in the indictment. Defendant Velez has multiple prior theft convictions and appears to have been on Philadelphia supervision for two prior convictions, one in Montgomery County and one in Bucks County, again during the time charged in the indictment. The fact that defendants Gonzalez and Velez were on court supervision at the time of the instant offenses, distributing drugs on a regular basis for a prolonged period of time, is all this Court needs to know about their sheer inability to abide by the law, let alone by any condition or combination of conditions the court might consider.

Defendant Rivera is also a convicted drug trafficker. He has a prior felony conviction for PWID from 2017, clearly indicating his continued engagement in this highly dangerous criminal activity.

Defendant Rondon-Herrea does not appear to have any criminal convictions, however, he is not legally present in the United States, is subject to deportation, and therefore is a substantial flight risk.

At the time of this writing, the full reports from Pre-Trial Services are not completed and available to the government. Nevertheless, it is reasonable to infer that none of these defendants will have legitimate employment to speak of, as they were all fully employed distributors of fentanyl on a block that operated 24 hours a day, seven days a week. Indeed, defendants Rivera and Velez worked actual "shifts" on the block, with set hours and days of the week, in order to keep the operation running smoothly. As a result, there will likely not be anything meaningful for these defendants to offer in terms of employment, financial resources, character and community engagement to rebut the presumption that exists for detention in this case.

## II.     **MAXIMUM PENALTIES**

The total maximum penalty the defendants each face is a mandatory minimum of 10 years' imprisonment (15 years' imprisonment for only defendant Gonzalez), a maximum term of imprisonment of life, a maximum fine of $15 million for defendants Gonzalez, Velez, and Rondon-Herrera, and $10 million for defendant Rivera, a minimum term of supervised release of 5 years, and a special assessment of $200 for defendants Gonzalez, Velez, and Rondon-Herrera, and $100 for defendant Rivera.

## III.    **APPLICABLE LAW**

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in determining whether a person should be released or detained. In summary, these factors are:

a. the nature and circumstances of the offenses charged;

b. the weight of the evidence against the defendant;

c. the history and characteristics of the defendant including-

    i. employment history, financial resources, drug abuse, criminal history and record of appearance at court proceedings, and

    ii. whether he was on supervision at the time of his offenses or arrests or

was on release pending court proceedings;

d. the dangerousness to any person or the community.

Further, the Bail Reform Act provides that with respect to certain specified crimes, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Title 18, United States Code, Section 3142(e).[3] Section 3142(e)(3) states:

> Subject to rebuttal...it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed:
>
> (A)  an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. '801 et seq.)...

18 U.S.C. § 3142(e)(3)(A).

Thus, presumptions of flight and community danger arise where there is probable cause to believe that the defendant has committed a violation of the Controlled Substances Act which carries a maximum penalty of ten years or more. *United  States v. Suppa*, 799 F2d 115, 120 (3d Cir. 1986). In this case, the defendants are all charged with drug trafficking offenses that trigger the presumption; indeed, the defendants are facing a mandatory 10 or 15 years'

---

[3] The pretrial detention statute was a response to "the alarming problem of crimes committed by persons on release."  *United States v. Salerno*, 481 U.S. 739, 742 (1987).  "The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses.  18 U.S.C. § 3142(f).  Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest. Nor is the act by any means a scattershot attempt to incapacitate those who are merely suspected of these serious crimes…While the Government's general interest in preventing crime is compelling, even this interest is heightened when the government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community.  Under these narrow circumstances, society's interest in crime prevention is at its greatest."  *Id.* at 750.

imprisonment and a maximum sentence of life imprisonment.

Where the presumption arises, a defendant must rebut the presumption by presenting some credible evidence that he will not flee and does not pose a threat to the community. *Suppa*, 799 F2d at 120. It is firmly established that evidence pertaining solely to "character and lifestyle," or community ties is insufficient to meet this burden. *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) (legislative history of the Bail Reform Act shows that "presence of [a tie to the community]...has no correlation with the question of safety of the community."). *See also*, *United States v. Strong*, 775 F.2d 504, 508 (3d Cir. 1985).[4]

"The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *Strong*, 775 F.2d at 506. Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. *The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community*."

Id. at 507 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). Congress and the Third Circuit further recognized: "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are

---

[4] The law is clear that even if rebutted, the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with the other factors set forth in 18 U.S.C. Section 3142(g). *See United States v. Dominquez*, 783 F.2d 702 (7th Cir. 1986).

charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S.Rep. No.225, 98th Cong., 1st Sess. 20). *Accord United States v. Cervantes*, 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the distribution of large quantities of drugs poses continuing danger to the community); *United States v. Ramirez*, 843 F.2d 256, 258 (7th Cir. 1988) (same).

IV.    **ARGUMENT**

A.  **The Defendants pose a risk of flight and a danger to the community.**

The nature and circumstances of the crimes alleged against the defendants are serious and the evidence is strong. Defendants Gonzalez, Rivera, and Velez all have criminal histories, and in fact, defendants Gonzalez and Velez were under supervision at the time of the alleged criminal conduct here, clearly indicating that they cannot abide by any court supervision, rules, or regulations, and that no condition set by this Court will sufficiently ensure their appearance or, more aptly, their likelihood to stop selling deadly drugs into the community. Defendant Rondon-Herrea is facing deportation, making him a significant flight risk. Moreover, all of the defendants have every incentive to flee prosecution now that they are facing multiple federal charges and up to a possible lifetime in prison.

The evidence demonstrates each defendant's very active role in a significant large-scale fentanyl distribution group based in Philadelphia but with a detrimental impact on communities across the state and beyond. The "Hot Sauce" fentanyl this DTO was selling was not only dangerous because it contained fentanyl, but also various deadly concoctions of adulterants and other controlled and non-controlled substances, many of which are too new or novel for DEA and the Department of Health to even know how they affect the human body, especially in various combinations. These substances included heroin, medetomidine, xylazine, tetracaine,

procaine, lidocaine, carfentanil, and phenyltetrahydromidazothiazole. These defendants literally sold poison, putting out whatever product, regardless of its dangerousness, as long as it brought them money.

The sheer volume of fentanyl and other dangerous substances sold by this DTO during the investigation – as seen on regular surveillance, sold during the controlled purchases and seized during the search warrants – shows that all of the defendants are clearly a danger to the community. While thousands of bags of fentanyl were intercepted before they could reach the streets, the danger each of these defendants poses based on their involvement in this drug trafficking business is significant and it cannot be sufficiently quelled by any condition or combination of conditions.

### B. **Presumption of Detention**

The defendants have demonstrated by their participation in the charged conduct that they pose a significant risk of flight and danger to the community if released. Congress made this point very clearly when, for a crime like this, it codified statutory presumptions that no conditions of pretrial release can reasonably assure the safety of the community or the presence of the defendants at trial. The defendants cannot overcome this presumption and pre-trial detention should be granted.

### V.    **CONCLUSION**

There are no conditions or combination of conditions that will reasonably assure the presence of the defendants and the safety of the community as required.

WHEREFORE, the government respectfully submits that its Motion for

Defendants' Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Lindsey T. Mills*
Lindsey T. Mills
Assistant United States Attorney


Date: June 12, 2026

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  26-263-2 |
| JAMIE VELEZ | : | |

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

  (a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

  (b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

  1. There is probable cause to believe that the defendant committed multiple offenses charging conspiracy to distribute controlled substances, and possession with the intent to distribute fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(B). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), is punishable by up to a lifetime in

prison under the Controlled Substances Act, and therefore, the Court must presume – subject to rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

2.    The evidence in this case is strong, and includes:

a.    The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

b.    The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.      What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.      On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.      In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over

2,500 individual baggies, ready for distribution on the block by DTO members.

3.     The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $15 million, a minimum term of supervised release of 5 years, and a special assessment of $200.

4.     The strength and nature of the case against the defendant, combined with the fact that the defendant has a criminal history including multiple theft convictions, and he was on probation and court supervision at the time of the instant offense, establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.     As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  26-263-3 |
| OSWALDO MERCED-RIVERA | : | |

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(c)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(d)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

1.    There is probable cause to believe that the defendant committed conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), is punishable by up to a lifetime in prison under the Controlled Substances Act, and therefore, the Court must presume – subject to

rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

2.　The evidence in this case is strong, and includes:

a.　The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

b.　The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.　What that investigation revealed was the existence of a business,

involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.      On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.      In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

3.    The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $10 million, a minimum term of supervised release of 5 years, and a special assessment of $100.

4.    The strength and nature of the case against the defendant, combined with the fact that the defendant has a criminal history including a prior felony drug trafficking conviction establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.    As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  26-263-4 |
| ANYELO RONDON-HERRERA | : | |

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(e)     the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(f)     the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

1.     There is probable cause to believe that the defendant committed multiple offenses charging conspiracy to distribute controlled substances, and possession with the intent to distribute fentanyl, heroin and methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A), is punishable by up to a lifetime in prison under the Controlled Substances Act, and therefore, the Court must presume – subject to rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

    2.    The evidence in this case is strong, and includes:

    a.    The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

    b.    The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO

members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.      What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.      On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.      In addition, at defendant Velez's residence, located at 4719 Hartel

Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

3.      The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $15 million, a minimum term of supervised release of 5 years, and a special assessment of $200.

4.      The strength and nature of the case against the defendant, combined with the fact that the defendant is present illegally in the United States and is subject to deportation, establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.      As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order, was served by email on the following defense counsel:


Terri Pawelski, Esq.
*Counsel for Defendant Jamie Velez*

Mark S. Greenberg, Esq.
*Counsel for Defendant Oswaldo Merced-Rivera*

No Attorney of Record (as of this filing)eby
*Anyelo Rondon-Herrera*


June 12, 2026

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  26-263 |
| v. | : | |
| JOSE GONZALEZ | : | |
| JAMIE VELEZ | | |
| OSWALDO MERCED-RIVERA | : | |
| ANYELO RONDON-HERRERA | | |

## <u>GOVERNMENT'S MOTION FOR PRETRIAL DETENTION</u>

The United States of America, by and through David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Lindsey T. Mills, Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendants, Jose Gonzalez,[1] Jamie Velez, Oswaldo Merced-Rivera, and Anyelo Rondon-Herrera, prior to trial.

Each of the above-named defendants has been charged because of his involvement in large-scale and dangerous fentanyl trafficking, responsible for distributing thousands of bags – each one capable of killing the user – of fentanyl mixed with dangerous adulterants into the streets of Kensington in Philadelphia. All while defendants Gonzalez and Velez were on probation for other criminal convictions at the time, and defendant Rondon-Herrera, a citizen of the Dominican Republic, was illegally present in the United States.[2]

---

[1] At his initial appearance before the Honorable Lynn A. Sitarski on June 11, 2026, defendant Gonzalez stipulated to pre-trial detention without prejudice. He is addressed in this motion for the sake of completeness.

[2] At the time of writing this motion, the government is still in the process of confirming whether an ICE detainer will be lodged as to defendant Rondon-Herrera.

Following a months-long investigation by Drug Enforcement Administration ("DEA"), Chester County Detectives, and the Philadelphia Police Department's Intensive Drug Investigation Squad ("IDIS"), each of the charged defendants was identified as a key participant in the packaging and distribution of enormous quantities of fentanyl. These defendants were responsible for running an entire block, the 2800 block of Kensington Avenue, pushing large volumes of their branded "Hot Sauce" stamped fentanyl into the streets and fueling the opioid epidemic that is ravaging the Kensington neighborhood and the City of Philadelphia.

The defendants are all tied to a significant drug trafficking organization ("DTO"), referred to in the Indictment as the "Hot Sauce DTO," responsible for distributing substantial quantities of dangerous and deadly drugs into this community in the Eastern District of Pennsylvania and beyond. Each defendant also either has a criminal history, many involving drug trafficking, was on court supervision at the time of the charged criminal conduct, or is in this country illegally and subject to deportation, thereby enhancing the risk that each defendant poses as a clear danger to the community or a substantial risk of flight. Accordingly, pretrial detention is necessary in this case.

The defendants are charged by Indictment with several violations of Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). The defendants are therefore facing a maximum penalty under the Controlled Substances Act of life imprisonment and a mandatory minimum of either 10 years' imprisonment, or 15 years' imprisonment for defendant Gonzalez due to the 851 notice of a prior drug conviction, and, thus, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community or the defendants' presence at trial. *See* 18 U.S.C. § 3142(e)(3)(A).

The defendants cannot rebut this presumption and therefore, should be detained. There is no condition or combination of conditions that will reasonably assure the defendants' appearance as required and/or the safety of the community, and the Government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendants.

## I.    BACKGROUND

### A.  Probable Cause and Evidence In This Case

A grand jury indicted the defendants for multiple counts of conspiracy to distribute controlled substances, distribution of fentanyl and possession with the intent to distribute fentanyl, heroin, and methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C). Probable cause thus exists to believe that the defendants violated these statutes. The anticipated trial evidence in this case is strong and clearly demonstrates the defendants' guilt.

The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington

Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,600 individual bags, of the deadly poison on a daily basis. In order to fully identify *and dismantle* this drug trafficking organization, the investigation spanned over six months, involved countless hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

Finally, on March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that

fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

### B. Criminal History and Defendant Background

Defendant Gonzalez has at least four prior felony drug trafficking convictions for Possession with Intent to Distribute ("PWID") and was on Philadelphia probation for possession of a firearm as a felon at the time of the conduct charged in the indictment. Defendant Velez has multiple prior theft convictions and appears to have been on Philadelphia supervision for two prior convictions, one in Montgomery County and one in Bucks County, again during the time charged in the indictment. The fact that defendants Gonzalez and Velez were on court supervision at the time of the instant offenses, distributing drugs on a regular basis for a prolonged period of time, is all this Court needs to know about their sheer inability to abide by the law, let alone by any condition or combination of conditions the court might consider.

Defendant Rivera is also a convicted drug trafficker. He has a prior felony conviction for PWID from 2017, clearly indicating his continued engagement in this highly dangerous criminal activity.

Defendant Rondon-Herrea does not appear to have any criminal convictions, however, he is not legally present in the United States, is subject to deportation, and therefore is a substantial flight risk.

At the time of this writing, the full reports from Pre-Trial Services are not completed and available to the government. Nevertheless, it is reasonable to infer that none of these defendants will have legitimate employment to speak of, as they were all fully employed distributors of fentanyl on a block that operated 24 hours a day, seven days a week. Indeed, defendants Rivera and Velez worked actual "shifts" on the block, with set hours and days of the week, in order to keep the operation running smoothly. As a result, there will likely not be anything meaningful for these defendants to offer in terms of employment, financial resources, character and community engagement to rebut the presumption that exists for detention in this case.

## II.    <u>MAXIMUM PENALTIES</u>

The total maximum penalty the defendants each face is a mandatory minimum of 10 years' imprisonment (15 years' imprisonment for only defendant Gonzalez), a maximum term of imprisonment of life, a maximum fine of $15 million for defendants Gonzalez, Velez, and Rondon-Herrera, and $10 million for defendant Rivera, a minimum term of supervised release of 5 years, and a special assessment of $200 for defendants Gonzalez, Velez, and Rondon-Herrera, and $100 for defendant Rivera.

## III.    <u>APPLICABLE LAW</u>

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in determining whether a person should be released or detained. In summary, these factors are:

   a. the nature and circumstances of the offenses charged;

   b. the weight of the evidence against the defendant;

   c. the history and characteristics of the defendant including-

      i. employment history, financial resources, drug abuse, criminal history and record of appearance at court proceedings, and

      ii. whether he was on supervision at the time of his offenses or arrests or

was on release pending court proceedings;

    d. the dangerousness to any person or the community.

Further, the Bail Reform Act provides that with respect to certain specified crimes, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Title 18, United States Code, Section 3142(e).[3] Section 3142(e)(3) states:

> Subject to rebuttal...it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed:
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. '801 et seq.)...

18 U.S.C. § 3142(e)(3)(A).

Thus, presumptions of flight and community danger arise where there is probable cause to believe that the defendant has committed a violation of the Controlled Substances Act which carries a maximum penalty of ten years or more. *United States v. Suppa*, 799 F2d 115, 120 (3d Cir. 1986). In this case, the defendants are all charged with drug trafficking offenses that trigger the presumption; indeed, the defendants are facing a mandatory 10 or 15 years'

---

[3] The pretrial detention statute was a response to "the alarming problem of crimes committed by persons on release." *United States v. Salerno*, 481 U.S. 739, 742 (1987). "The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f). Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest. Nor is the act by any means a scattershot attempt to incapacitate those who are merely suspected of these serious crimes…While the Government's general interest in preventing crime is compelling, even this interest is heightened when the government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest." *Id.* at 750.

imprisonment and a maximum sentence of life imprisonment.

Where the presumption arises, a defendant must rebut the presumption by presenting some credible evidence that he will not flee and does not pose a threat to the community. *Suppa*, 799 F2d at 120.  It is firmly established that evidence pertaining solely to "character and lifestyle," or community ties is insufficient to meet this burden.  *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) (legislative history of the Bail Reform Act shows that "presence of [a tie to the community]...has no correlation with the question of safety of the community."). *See also*, *United States v. Strong*, 775 F.2d 504, 508 (3d Cir. 1985).[4]

"The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *Strong*, 775 F.2d at 506.  Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. *The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community*."

Id. at 507 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). Congress and the Third Circuit further recognized:  "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are

---

[4] The law is clear that even if rebutted, the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with the other factors set forth in 18 U.S.C. Section 3142(g).  *See United States v. Dominquez*, 783 F.2d 702 (7th Cir. 1986).

charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting

S.Rep. No.225, 98th Cong., 1st Sess. 20). *Accord United States v. Cervantes*, 951 F.2d 859,

861 (7th Cir. 1992) (defendant involved in the distribution of large quantities of drugs poses

continuing danger to the community); *United States v. Ramirez*, 843 F.2d 256, 258 (7th Cir.

1988) (same).

IV.    **ARGUMENT**

    A.  **The Defendants pose a risk of flight and a danger to the community.**

The nature and circumstances of the crimes alleged against the defendants are serious and

the evidence is strong. Defendants Gonzalez, Rivera, and Velez all have criminal histories, and

in fact, defendants Gonzalez and Velez were under supervision at the time of the alleged criminal

conduct here, clearly indicating that they cannot abide by any court supervision, rules, or

regulations, and that no condition set by this Court will sufficiently ensure their appearance or,

more aptly, their likelihood to stop selling deadly drugs into the community. Defendant Rondon-

Herrea is facing deportation, making him a significant flight risk. Moreover, all of the defendants

have every incentive to flee prosecution now that they are facing multiple federal charges and up

to a possible lifetime in prison.

The evidence demonstrates each defendant's very active role in a significant large-scale

fentanyl distribution group based in Philadelphia but with a detrimental impact on communities

across the state and beyond. The "Hot Sauce" fentanyl this DTO was selling was not only

dangerous because it contained fentanyl, but also various deadly concoctions of adulterants and

other controlled and non-controlled substances, many of which are too new or novel for DEA

and the Department of Health to even know how they affect the human body, especially in

various combinations. These substances included heroin, medetomidine, xylazine, tetracaine,

procaine, lidocaine, carfentanil, and phenyltetrahydromidazothiazole. These defendants literally sold poison, putting out whatever product, regardless of its dangerousness, as long as it brought them money.

The sheer volume of fentanyl and other dangerous substances sold by this DTO during the investigation – as seen on regular surveillance, sold during the controlled purchases and seized during the search warrants – shows that all of the defendants are clearly a danger to the community. While thousands of bags of fentanyl were intercepted before they could reach the streets, the danger each of these defendants poses based on their involvement in this drug trafficking business is significant and it cannot be sufficiently quelled by any condition or combination of conditions.

### B.  Presumption of Detention

The defendants have demonstrated by their participation in the charged conduct that they pose a significant risk of flight and danger to the community if released. Congress made this point very clearly when, for a crime like this, it codified statutory presumptions that no conditions of pretrial release can reasonably assure the safety of the community or the presence of the defendants at trial. The defendants cannot overcome this presumption and pre-trial detention should be granted.

## V.    CONCLUSION

There are no conditions or combination of conditions that will reasonably assure the presence of the defendants and the safety of the community as required.

WHEREFORE, the government respectfully submits that its Motion for Defendants' Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


/s/ Lindsey T. Mills
Lindsey T. Mills
Assistant United States Attorney



Date: June 12, 2026

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  26-263-2 |
| JAMIE VELEZ | : | |

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

      (a)     the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

      (b)     the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

1.     There is probable cause to believe that the defendant committed multiple offenses charging conspiracy to distribute controlled substances, and possession with the intent to distribute fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(B). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), is punishable by up to a lifetime in

prison under the Controlled Substances Act, and therefore, the Court must presume – subject to rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

2.     The evidence in this case is strong, and includes:

a.     The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

b.     The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.        What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.        On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.        In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over

2,500 individual baggies, ready for distribution on the block by DTO members.

3.      The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $15 million, a minimum term of supervised release of 5 years, and a special assessment of $200.

4.      The strength and nature of the case against the defendant, combined with the fact that the defendant has a criminal history including multiple theft convictions, and he was on probation and court supervision at the time of the instant offense, establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.      As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

     v.      :      CRIMINAL NO.  26-263-3

OSWALDO MERCED-RIVERA      :

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

        (c)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

        (d)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

1.    There is probable cause to believe that the defendant committed conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), is punishable by up to a lifetime in prison under the Controlled Substances Act, and therefore, the Court must presume – subject to

rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

2.      The evidence in this case is strong, and includes:

a.      The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

b.      The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.      What that investigation revealed was the existence of a business,

involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.      On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.      In addition, at defendant Velez's residence, located at 4719 Hartel Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

3.      The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $15 million, a minimum term of supervised release of 5 years, and a special assessment of $200.

4.      The strength and nature of the case against the defendant, combined with the fact that the defendant has a criminal history including a prior felony drug trafficking conviction establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.      As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  26-263-4 |
| ANYELO RONDON-HERRERA | : | |

AND NOW, this _____ day of June, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

      (e)     the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

      (f)     the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f) because:

1.     There is probable cause to believe that the defendant committed multiple offenses charging conspiracy to distribute controlled substances, and possession with the intent to distribute fentanyl, heroin and methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). The crime of distribution and possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A), is punishable by up to a lifetime in prison under the Controlled Substances Act, and therefore, the Court must presume – subject to rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A).

2.     The evidence in this case is strong, and includes:

a.     The investigation began in August 2025, when a female, identified and known to the grand jury as Person #2, was found deceased at her parents' home in Chester County, Pennsylvania, from an apparent fentanyl overdose. Based upon the evidence found on scene, interviews with friends, and a review of her cellular phone and telephone records, investigators determined that Person #2 had used fentanyl stamped "Hot Sauce" just prior to her death, and that she obtained that fentanyl from the 2800 block of Kensington Avenue, specifically from defendant Jamie Velez. Moreover, investigators learned that she had communicated with a contact saved in her phone as "Gordo," later determined to be both Velez and his fellow "Hot Sauce" distributor, defendant Oswaldo Merced-Rivera.

b.     The investigation – now principally involving DEA and IDIS – focused its attention on identifying those responsible for distributing "Hot Sauce" on the 2800 block of Kensington Avenue, a "business" that IDIS investigators believed was responsible for distributing its branded product, in volumes of upwards of 100 bundles, or 1,6000 individual bags, on a daily basis. The investigation spanned over six months, involved hours of physical surveillance, the installation of GPS trackers on vehicles, the analysis of cellular phone and other electronic records, and the completion of approximately nine controlled purchases of bundles of "Hot Sauce," using both FBI and IDIS confidential sources, from Hot Sauce DTO

members, including defendants Velez and Rivera, or a street-level dealer working for them.

c.    What that investigation revealed was the existence of a business, involving street-level dealers engaged in the actual hand-to-hand drug transactions with customers and who reported up to the block "case workers," defendants Rivera and Velez, both of whom were responsible for the day-to-day management and supervision of the block. Moreover, defendants Velez and Rivera either directly sold to customers themselves or directed the sales to the street-level sellers, and collected the money from those sales. Defendants Velez and Rivera reported to the block "owner," defendant Gonzalez, who was responsible for ensuring that Velez and Rivera had enough fentanyl to distribute to the street-level dealers and keep the block running and open for business 24 hours a day, 7 days a week. In January 2026, investigators were able to identify the supplier to Gonzalez, defendant Rondon-Herrera, who ran the packaging and bagging operation from his residence located at 2812 Rawle Street, and who provided those pre-packaged and stamped baggies of fentanyl to Gonzalez, all for redistribution by the Hot Sauce DTO.

d.    On March 12, 2026, law enforcement executed a number of judicially approved search warrants at various residences throughout Philadelphia associated with the Hot Sauce DTO. At Rondon-Herrera's house, 2812 Rawle Street, investigators located evidence of that fentanyl packaging table they suspected, including over 1,790 baggies of fentanyl, most of which were stamped "Hot Sauce," bulk fentanyl, heroin, and methamphetamine, as well as all of the necessary drug distribution paraphernalia, such as new and unused baggies needed for packaging, scales and grinders, and even the actual "Hot Sauce" stamper and ink pads.

e.    In addition, at defendant Velez's residence, located at 4719 Hartel

Avenue, law enforcement seized hundreds of bundles of the "Hot Sauce" fentanyl product, over 2,500 individual baggies, ready for distribution on the block by DTO members.

3.      The total maximum penalty the defendant faces is a mandatory minimum of 10 years of imprisonment, maximum term of imprisonment of life, a maximum fine of $15 million, a minimum term of supervised release of 5 years, and a special assessment of $200.

4.      The strength and nature of the case against the defendant, combined with the fact that the defendant is present illegally in the United States and is subject to deportation, establish the high risk that the defendant will not appear as required by the Court and his danger to the community.

5.      As the present offense carries a maximum term of imprisonment of ten years or more and is a violation of the Controlled Substances Act, there is a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of other persons and the community. *See* 18 U.S.C. §§ 3142(e)(3)(A). That presumption has not been rebutted.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. SCOTT W. REID
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order, was served by email on the following defense counsel:


Terri Pawelski, Esq.
*Counsel for Defendant Jamie Velez*

Mark S. Greenberg, Esq.
*Counsel for Defendant Oswaldo Merced-Rivera*

No Attorney of Record (as of this filing)eby
*Anyelo Rondon-Herrera*


June 12, 2026